East'n. District.
*June*, 1826.
DESTREHAN
*vs.*
DESTREHAN'S
EXECUTORS.

4ns557
44 877
4NS 557
115 418

*DESTREHAN* vs. *DESTREHAN'S EXECUTORS.*

APPEAL from the court of the first district.

MATHEWS, J., delivered the opinion of the court. The questions submitted to the court, to be decided in the present case, arise out of proceedings relating to an adjustment and partition of the succession of the late Jean Noel Destrehan : some are of fact and others of law. To understand them, it is necessary to state the situation of the parties to this suit, and that of their ancestor, from whom they claim to inherit. The widow G. N. Destrehan claims, as tutrix of her minor children now living, and as heir to those who died since the death of their father and grandfather, a part of the succession of the latter, which appears to have been administered, and was finally adjudged to his wife at the appraised value, as a partner in the community, and who is since dead, leaving as heirs the same persons who succeeded as such to her husband's estate, with the exception of the present appellant, so far as she claims in her own right.

Grand children coming to the partition of their grandfather's estate, with uncles and aunts, are not obliged to collate an onerous obligation due by their father.

DESTREHAN
*vs.*
DESTREHAN'S
EXECUTORS.

The evidence of the case shows, that G. N. Destrehan died before his father, leaving children, who were called to the inheritance of their grandfather, J. N. Destrehan, together with uncles and aunts, immediate descendants of the latter. The widow of G. N. Destrehan renounced the community of acquests and gains in her husband's estate, and, as tutrix of her minor children, accepted for them his succession, under the benefit of an inventory. The widow J. N. Destrehan, to whom had been adjudged the property which was held in common between her and her husband previous to his death, attempted to bequeath and distribute the amount of her husband's succession amongst his heirs, and for that purpose seems to have rendered her accounts to the judge of the court of probates: to these accounts opposition was made by the present appellant, which gives rise to the questions now before the court, the most important of which relates to the charges against the children of G. N. Destrehan, for advances made to the father during his life time, and which they are required to collate with the other heirs of their grandfather. The sums thus required to be collated, consist of several

items: 1st. A sum of 7000 dollars; 2d. One
of 9000 dollars; 3d. A note executed by his
son, G. N. Destrehan, to his father, for 58,564
dollars, payable on the first of April, 1826.
The opposition extended also to other charges
against the estate of her husband, by Mrs.
Destrehan the elder, which, it was con-
tended were properly chargeable to herself;
but, as the correctness of the decision of the
court below, in relation to these matters, is
not introduced, we shall not notice them
further than to express our concurrence, this
far, in the judgment of the district court: that
judgment is also correct in relation to the
item of 7000 dollars, which does not appear
to have been established by evidence. In
relation to the 9000 dollars, we are also of
opinion, that the decision of the district court
is, in point of fact; as being proven by the oath
of one credible witness, and corroborating
circumstances, such as the will of the grand-
father, and the evidence of advancements
made by him to his daughters, &c.

The value of the slave, which was estimated
at 1000 dollars, and died before the opening
of the succession of J. N. Destrehan, was
properly deducted as having perished for

East'n. District.
*June*, 1826.

DESTREHAN
*vs.*
DESTREHAN'S
EXECUTORS.

said succession; but the judgment of the district court having ordered the balance of this item, viz. 8000 dollars, together with a part of the amount of the note of 58,564 dollars, to be collated, the present appeal was taken by the opponents: and, it is now contended on their part, 1st. That they are not legally bound to collate any thing advanced to their father; 2d. That if they are compellable by law to collate; no part of the amount of the note of their father to the grandfather, ought to enter into such collation.

In support of the first position assumed by the counsel of the appellants, he relies principally on the doctrine of the Spanish law, as laid down by Febrero, part 2, book 2, chap. 3, nos. 26 to 29. Admitting, that grandchildren who succeeded to the inheritance of their grandfather, conjointly with descendants in the first degree, and who had renounced the inheritance of their father on account of its being worth little or nothing, in consequence of waste and bad management by him, were not bound by the former laws of this country to collate advancements made to their father: we are decidedly of opinion, that this rule of inheritance has been changed by the intro-

duction of the Civil Code. Without under-
taking completely to reconcile the apparent
discrepancy between the 19th article of page
148, and articles 27 and 28 in page 150 of the
Code, it might be observed, that the first re-
lates to the general doctrine on the subject
of degrees of kindred and representation
amongst relations in the decending line;
whilst the two last are specific in their enact-
ments, and lay down rules clear and special
with regard to the manner in which decen-
dants must succeed to the estates of their
ascendants. Allowing that they are at va-
riance, the latter may be considered as ex-
ceptions to the former: according to the
rules of inheritance expressly declared in
these last articles, grandchildren who partake
of a succession together with children, come
in by representation of their fathers and mo-
thers, and take sure steps, &c.: if grand-
children come in by right of representation,
they are bound to collate what had been given
to their fathers or mothers, although they may
have renounced their inheritances. *Civil Code,*
*p.* 194, *art.* 203.

From this view of the subject, it appears to
us, that a doubt cannot be reasonably enter-

East'n. District.
June, 1826.

DESTREHAN
vs.
DESTREHAN'S
EXECUTORS.

tained as to the liability of grandchildren to collate property received by their immediate parents as advancements made by their ascendants in the first degree.

The appellants in the present case, must be considered as inheriting from their grandfather by representation, and are therefore bound to bring back to the mass of his succession whatever sums of money or other property may have been advanced to their father during his life time, as donations to further his interest and comfort in life, &c.: of this class of beneficent advances, is the sum of 8000 dollars, proven as above stated; but, as it relates to the item of 58,564 dollars, the amount of the note executed as before represented, this court has doubted much the propriety of the judgment of the court below, and finally come to the conclusion, that it is not supportable on legal principles. The decision of this question, the most difficult and important in the cause, depends on a just interpretation of the 205th and 206th articles of the Code, found at pages 195 and 196, which are expressed in the words following: "The advantages which a father bestows on his son, though in any other manner than by

donation or legacy, are subject to collation." East'n. District.
June, 1826.

DESTREHAN
vs.
DESTREHAN'S
EXECUTORS. "Thus when a father has sold a thing to his son at a very low price, or has paid for him the price of some purchase, or has spent money to improve his son's estate, all that is subject to collation." *Art.* 206. "The acts, however, of ascendants, which are beneficial to the descendants, are not all liable to collation. Those acts, by which the ascendant causes some part of his property to pass into the hands of his descendants by concealed and indirect means, are only liable to it: thus, there is no collation due, where a partnership was *bona fide* entered into between the ascendant and one of his lawful descendants, when the conditions of such partnership are duly proven."

"The same rule applies to all burthensome obligations, and to all mercantile transactions which the son executes with the father; none of which give place to collation, unless there has been on the part of the father an express or tacit intention of bestowing an advantage on his son; and thus, by that means, some part of the patrimony of one child is taken to increase the patrimony of the other." Before entering into any discussion on these articles,

East'n. District.
*June*, 1826.

DESTREHAN
*vs.*
DESTREHAN'S
EXECUTORS.

it may not be improper to remark, that the whole doctrine of collation is based principally on the equality which the law requires in the distribution of successions amongst co-heirs.

The main foundation of the charge against the estate of G. N. Destrehan, in favor of that of his father, amounting to the large sum of $58,564, as evidenced by the promissory note of the former, seems, from the evidence of the case, to have been payments made by the latter, of the price of a plantation bought by his son. Had the affair been left in its original situation, the amount thus paid would most clearly have been embraced by the provisions of the 205th article of the Code, as cited. But it does appear from an investigation of the whole transaction, that interest was added on interest, item to item, until the original sum was more than doubled; giving to the matter the appearance of a contract, completely onerous on the part of the obligor; and which certainly bears no intrinsic evidence of an intention on the part of the father of bestowing an advantage on his son, to increase his patrimony at the expense of that of his other children. It appears, from some evidence on the record, that Mr. Destrehan

the elder was in the habit of exacting ten
per cent. per annum interest, on the sums by
him advanced to his children, for the benefit
of the younger members of his family, or those
who remained under his paternal care and
direction; and this mode of conduct is said
to be sanctioned by reason and justice, and
recognised as legal by principles found in the
Roman law. If a parent gives to his child,
who is about to take upon himself the ma-
nagement of his own affairs; in other words,
who is about to commence the arduous task
of providing for his own wants and those of a
family, should he be thus connected in life, no
more of his estate than a proportion equal to
those retained for children who remain with
him, it is difficult to discover any justice in
burthening the child advanced with a heavy
interest on the capital given. Ten per cent.
per annum, we believe to be the full value of
any capital used in the ordinary course of bu-
siness. Is it then a donation to advance money
at that rate of interest; ought it not to be ra-
ther considered as an onerous loan? Parents
are not generally in the habit of giving to
their children, by way of advancement, more
than a moderate proportion of their property

East'n. District. compared with that which they retain for their
June, 1826. own use, and the benefit of that part of their
DESTREHAN family which remains with them.
vs
DESTREHAN'S
EXECUTORS.    It is hardly necessary to state, that a child
of full age may contract with his father, and
create obligations equally binding as would
be created by similar contracts with any other
individual of the community. In the present
case, G. N. Destrehan promised to pay to his
father a large sum of money, made up of ad-
vances for his benefit, and interest thereon, at
least at the highest rate tolerated by law, if
no more, which it is not necessary to decide
in this case. In this promise we can see no-
thing but a contract of loan on interest in
the usual form of such agreements. It is writ-
ten, and certainly could have been enforced
against the son, without his being at liberty to
prove any thing contrary to the writing. If
his estate were now solvent it could be effec-
tually enforced against his representatives,
and the administrators of his father's estate
would be bound to see it fully collected, un-
less the heirs chose to relinquish it. The
circumstance of the alleged insolvency of
the estate of the son cannot, in our opinion,
alter the nature of the contract, which is

essentially commercial and burthensome on the part of the promisor and his succession.

In collating the $8,000, we think, with the judge below, that it ought to be placed with the succession of the grandfather alone.

East'n. District.
*June*, 1826.

DESTREHAN
*vs.*
DESTREHAN'S
EXECUTORS.

It is therefore ordered, adjudged, and decreed, that the judgment of the district court be avoided, reversed, and annulled; and it is further ordered, adjudged and decreed, that the cause be sent back to the court of probates, for the purpose of causing a final adjustment and partition of the succession of J. N. Destrehan, according to the principles expressed in this opinion and judgment, the appellees paying the costs of this appeal.

*Seghers* for the plaintiff, *Derbigny*, *Eustis*, and *Grymes*, for the defendants.

----

DERBIGNY, EUSTIS, and GRYMES, on an application for a re-hearing.

In this case a judgment, has been rendered, which is considered as contrary to law, and evidence; and above all, against that equity which ought to be the principal guide in deciding a case of this nature.

VOL. IV. (N. s.)          72

DESTREHAN
*vs.*
DESTREHAN'S
EXECUTORS.

Your honorable court has principally based their judgment on the circumstance, that the proof of the advances made by J. N. Destrehan to his son, *appears* in the shape of a note of hand, subscribed by the son in favor of the father, in which is included the interest, at the rate of ten per cent. per annum; and from thence they have concluded that this is one of those burthensome obligations, which form an exception to the general rule by which heirs are bound to return to the mass of the inheritance the sums by them received from their ancestor in his life time, *the whole of which is to be distributed equally among them all.*

But in the first place, and before recurring to the evidence which shows what has been *the true nature of this transaction,* your honorable court has evidently been mistaken in the interpretation of the article of our Code, which says, " that burthensome obligations and mercantile transactions which the son executes with his father, do not give him lieu to collation, unless there has been, on the part of the father, an express or tacit intention of bestowing an advantage on his son, and there is by that means some part of the patrimony of one child taken to increase the patrimony of the

other." This paragraph of art. 206, p. 197 of East'n. District.
*June*, 1826.

DESTREHAN
*vs.*
DESTREHAN'S
EXECUTORS.

our Code, is evidently intended to apply *exclusively* to the obligations contracted by the father towards the son; otherwise it would have no sense, for *an obligation of the son towards the father can never conceal an intention on the part of the father to bestow an advantage on his son.* If there could be a doubt that this is the only reasonable interpretation which can be given to this *paragraph*, it is done away by recurring to the principle established in the beginning of the article, of which this paragraph is but an illustration. " *The acts however of the ascendant which are beneficial to his descendants are not at all liable to collation.*" " Thus there is no collation due where, &c."

If you will take the trouble of examining what would be the situation of things, if Guy N. Destrehan himself was alive, you may easily ascertain that no other interpretation can be given to the article above quoted. On the death of his father, he would have been at the same time one of the heirs, and one of the debtors of his estate. A compensation would have established itself between his share of the inheritance and his debt: whether a debtor or a donee, the same result would have taken

East'n. District.
June, 1826.

DESTREHAN
vs.
DESTREHAN'S
EXECUTORS.

place. Whether his father lent him or gave him in advance the money which he had received, he must have accounted for it. Not so, if his father had consented in his favor an onerous obligation, he would then have been a *creditor* of the estate, and *unless it should have been shown that this onerous obligation concealed some advantage which his father intended to bestow on him,* he would not have been obliged to collate it; he would first have received the amount of his claim as *creditor,* and then his share of the inheritance as *heir;* that is most evidently the sense, indeed the only sense which can be given to the article which says, "The acts however of the ascendant, *which are beneficial to his descendants,* are not all liable to collation;" for the acts by which the descendant acknowledges himself the *debtor* of his ascendant are not acts *from which he can derive any benefit :* they constitute him the *debtor* not the creditor of the estate.

The article referred to by the court is therefore *not applicable to a case of this nature;* and we must beg leave to say, respectfully, that they have misunderstood it.

That the doctrine here contended for is the only sound one, is made still more evident by

recurring to the principle universally recog-
nised with respect to collation.

The article 192, page 192, of our Code, says,
" Collation of goods is the supposed or real
return which an heir makes to the mass, of
some property which he *received* in advance-
ment or otherwise, in order that such pro-
perty may be partaken as well as the other
effects of the succession." There is no doubt,
then, that Guy N. Destrehan would have been
obliged to collate to the mass of his father's
estate, what he had *received* in advancement
or otherwise. Are those who come to the
estate as his representatives, differently situa-
ted? Hear what Pothier says on the subject:
" Lorsque des petits enfans viennent à la suc-
cession de leur ayeul *par représentation* de leur
père ou mère, ils doivent rapporter tout ce
qui a été donné *ou prêté* à leur père ou mère
par l'ayeul à la succession duquel ils viennent.
La raison en est bien évidente; des repré-
sentans *ne peuvent avoir plus de droits dans une*
*succession que la personne qu'ils représentent*, et du
chef de laquelle ils viennent, suivant ce prin-
cipe de droit, " *qui jure alterius utitur, eodem*
*jure uti debet*," ils ne doivent pas plus prendre
dans la succession que cette personne y au-

East'n. District,
June, 1826.

DESTREHAN
vs.
DESTREHAN'S
EXECUTORS.

rait pris ; ils doivent être obligés *aux mêmes rapports* auxquels cette personne aurait été obligée.

" Cette décision a lieu, quand même ils n'auraient pas profité de ce qui a été donné à leur père ou mère qu'ils représentent, et qu'ils auraient renoncé à la succession ; car, comme ce n'est pas de leur chef qu'ils doivent ce rapport, mais du chef de leur père ou mère qu'ils représentent, il est indifférent qu'ils en ayent profité ou non.

" Cette décision a lieu, quand même ces rapports absorberaient toute leur portion héréditaire, et qu'il ne leur resterait plus rien. Ils ne pourraient prétendre en ce cas de légitime ; *car, n'ayant droit à la succession de leur ayeul, que du chef de leur père ou mère qu'ils représentent, ils ne peuvent aussi prétendre dans cette succession d'autre légitime que celle, qu'auraient pu prétendre leur pére ou mère ;* et par conséquent, ces donations leur doivent être imputées sur cette légitime comme elles auraient été imputées à leur père ou mère."

Observe, that the above is but the expounding of the principle contained in our own Code, page 149, article 18. " Representation is a fiction of the law, the effect of

which is to put the representative *in the place,*
*degree, and rights of the represented.*"

    These fundamental principles, to be found
in every book which has treated the subject,
would, it was presumed, have been the rule
of conduct of your honorable court, in the
decision of this case.  It was thought that you
would recognise, that the representatives
have no more right than the represented, that
*qui jure alterius utitur, eodem jure uti debet.*  But
these principles were not so much as hinted
at, in the judgment of this honorable court,
because they have taken the most extraor-
dinary position, that the loan was not subject
to collation by Guy N. Destrehan himself;
and thus it turns out, that although Guy N.
Destrehan, if alive, would have had to account
to the estate of his father for this loan, al-
though this loan would have been deducted
from his hereditary portion, although he would
have had to compensate his debt with his
inheritance, although confusion would have
taken place in him as, at once, debtor and
heir; yet his representatives are discharged
from his obligations, and admitted as heirs *in
his stead,* without accounting for what he has
received; and that, notwithstanding the rule

DESTREHAN
*vs.*
DESTREHAN'S
EXECUTORS.

which says, *qui jure alterius utitur, eodem jure uti debet.*

From such a result it may respectfully be inferred, that this honorable court has misunderstood the meaning of the article on which they have based their decision; for that decision is at war with the principles on which representation is founded.

But this honorable court have, we think, not only mistaken the law, they have misapprehended the evidence in this important case. What is that evidence? Why, that J. N. Destrehan has *advanced* to his son a sum of $40,000, (the adverse party avows $37,000.) If you look at the memorandum or account, found among the son's papers, and the production of which we compelled, you find the explication of the note of $58,564, $40,000 of which (say $37,000 if you please) are the capital *advanced;* the balance is made up of the interest which J. N. Destrehan used to charge on such occasions, not for himself but for the benefit of his minor children.

N. B. Le Breton tells you: " That Mr. J. N. Destrehan *advanced* some money to his son Mr. Guy N. Destrehan, and gave him up the several notes which he held; (the notes

East'n. District.
*June*, 1826.

DESTREHAN
*vs.*
DESTREHAN'S
EXECUTORS.

of Guy N. Destrehan to Henderson, for the price of the plantation) and it was on this occasion that Mr. Guy N. Destrehan gave to his father a promissory note of $58,000, which witness *understood from him* to be on account of the different *advances* which his father had made him; that in speaking of the sums he owed his father, Mr. Guy N. Destrehan spoke of them *as of sums which he should never be called upon to repay, and stated that it appeared to be his father's intention to make these advances to him part of the share which might be coming to him out of his father's estate.*

Mr. Hermann tells you: " He knows, from Mr. J. N. Destrehan *and from Mr. G. N. Destrehan his son, that the latter had received from his father a sum of* $40,000 ; that Mr. Destrehan, the father, *manifested some reluctance in making the above advance of* $40,000 to his son G. N. Destrehan, and observed, *that he did so on account of the plantation then purchased by his son.*" He speaks also of the interest he used to charge for the benefit of his minor children. All the witnesses state, that Guy N. Destrehan *had little or nothing but what he derived from his father.*

The facts then, as they result from the evi-

East'n. District.
June, 1826.

DESTREHAN
vs.
DESTREHAN'S
EXECUTORS.

dence, are these : Guy N. Destrehan, the son, being in strait circumstances, applied to his father for assistance; his father *advanced* to him $40,000, but at the same time stipulated that this sum should bear an interest in favor of his minor children; it was understood however between father and son that this money never should be repaid, except out of the share which would one day come to G. N. Destrehan in his father's estate. The $40,000 are composed of the notes of G. N. Destrehan to Henderson, for the price of the plantation, and the balance in cash: Destrehan the father, surrendered to his son those notes, *which bore Henderson's endorsements, and were secured by mortgage,* and took from his son his simple recognisance in the form of a note of hand to his own order.

Surely if these facts had been well understood the court would not have arrived at a conclusion which discharges G. N. Destrehan's *representatives* from accounting for this money. Was it an onerous obligation for the son to receive $40,000? Did he receive them at all? If he did receive them, must they not be accounted for? Has the circumstance of Destrehan, the father, charging interest

altered the stubborn fact, *that he advanced to his son* $40,000? The interest, it is said, was an unjust charge: take it away, if you think that equity requires so; but because interest has been charged, to destroy the capital cannot be justice, cannot be law.

East'n. District.
*June*, 1826.
DESTREHAN
*vs.*
DESTREHAN'S
EXECUTORS.

The court seems to have mistaken the evidence still further: they say that the capital has been *more than doubled* by the interest: if it were even so, still that is no reason why the capital should not be accounted for: but it is not so. The adverse party herself admits that the capital advanced was $37,000; our evidence shows $40,000. The note is $58,564; is then $18,564 more than one half of $58,564? This is adduced to show more and more that the court has been in an error throughout this case: and when we consider that it was argued nearly two months before it was decided, and that in this interval of time the members of this court have been absent in succession, so as to render it probable that they had no opportunity of examining this case together while it was fresh in their memories, it is not to be wondered at, that the evidence adduced, and even the laws quoted on the trial should have been but imperfectly understood.

DESTREHAN
*vs.*
DESTREHAN'S
EXECUTORS.

The plaintiffs therefore respectfully pray, that this case may be revised and argued *de novo.* They pray so, from a conviction that if this honorable court will find that justice has not been done, they will retrace their steps, and show, that if they may err as other men, they are willing to correct their errors while it is yet in their power.

The re-hearing was granted; and after the argument

PORTER, J., delivered the opinion of the court. The children of Guy N. Destrehan, deceased, who have accepted their father's succession, with the benefit of an inventory, claim the portion in their grandfather's estate to which their father, if alive, would have been entitled. Their uncles and aunts, with whom the partition is to be made, insist, that they must bring back into the succession and collate, various sums of money received by Guy N. Destrehan in his life time; and among others, the sum which is evidenced by his note in favor of his father, for $58,564, payable four years after date. This collation the grand children insist they are not obliged to

make, and the legal rights of the parties on this issue, form the principal question to be decided in the cause, and the only one which presents any difficulty in the decision.

East'n. District.
*June*, 1826.

DESTREHAN
*vs.*
DESTREHAN'S
EXECUTORS.

After the first argument, we were of opinion that the grand children were not obliged to collate the note on which this contest has arisen. That opinion was principally founded on the article of our former code, which declares that "burthensome obligations and mercantile transactions, which the son executes with his father are not subject to collation, unless there has been, on the part of the father, an express or tacit intention of bestowing an advantage on his son." The words of the law certainly authorised this construction; and the reason, on which the whole of the doctrine in regard to collation rests, gave it support. It might well be supposed to have been the intention of the law maker, that the son who received any thing in advance of his future claims as heir should collate; but, that if he entered into contracts with his father, as with a third person, they should be considered as ordinary obligations, to be discharged in the usual way, with all the burthens attached to them; and that he could not be permitted,

DESTREHAN
vs.
DESTREHAN'S
EXECUTORS.

after so contracting, to free himself from these burthens, release himself from the interest, and collate with his co-heirs, the principal alone. The objection urged against this construction, that in no case of the obligation from the son to the father, can there be a tacit, or express intention, of bestowing an advantage on the son, appears to us of little weight; many instances might be supposed, in which that intention might be expressed by the note; many more where it would be implied. We shall take one by way of example, and it will suffice: if the father lends the son a large sum of money, without interest, and takes his note, payable at a remote period of time, for the principal, there is a clear intention evidenced of bestowing an advantage on him; and the co-heirs would assuredly have a right to demand that the sum of money so obtained should be brought back into the mass and collated. *Civil Code*, 196, *art.* 206.

But on the second argument, another provision in our law has been discovered, which has an important effect on the construction of the article just commented on. It is that which declares, that on the partition of an estate each of the co-parceners must collate

conformable to the rules hereafter prescribed;
for gifts made to him, or *debts by him due*. This
provision is directly opposed to the construc-
tion contended for, of the 206th article. It
makes *debts* expressly subject to collation,
and does not distinguish of what kind, whether
those that carry interest, or those that do not.
Under such circumstances it is our duty to
seek for a construction that will prevent these
two provisions from clashing with each other,
We must, as we have often done before, in-
terpret in such a way, as will if possible, give
every part of the law effect.    *Civil Code*, 188,
*art.* 178.

To do so is not an easy task.    The counsel
have contended that the expressions " bur-
thensome obligations and mercantile transac-
tions which the son executes *with* the father,"
mean burthensome obligations which the
father executes *to* the son.    Such an inter-
pretation does considerable violence to the
language used in the law; for a man who re-
ceives a note from another, can hardly be said
to execute the note *with* the person, who is
bound *to* him.    But there is a stronger argu-
ment against this interpretation to be drawn
from the previous and immediately preceding

East'n District.
*June,* 1826.

DESTREHAN
*vs.*
DESTREHAN'S
EXECUTORS.

articles, to that which in these words are found. By them all kinds of feigned or simulated obligations from the father to the son are expressly provided for. It cannot be believed then, it was the intention of the law maker to provide, by ambiguous and doubtful terms, for cases on which he had the instant before expressed himself in clear and explicit language. *Civil Code,* 194, *art.* 205.

But it is not necessary to give any opinion on this point, for it is not requisite to a decision of the case before us. Perhaps when it is presented in such a way as it must be settled, it will be found that those obligations which, in pursuance of the words of the law, the son executes *with* the father; that is, jointly with him, are these which are contemplated by this enactment. The clause immediately follows the provision in relation to partnerships; and it is more than probable that while the subject of contracts, in which the father and son act together, were under the consideration of the legislature, that it was thought necessary to provide for those in which they might have a joint interest, as well as those in which there was a partnership, properly so caused. It is not

to be disguised, that this interpretation is East'n. District
June, 1826.

DESTREHAN
vs.
DESTREHAN'S
EXECUTORS.
liable to objections, but we think it presents
fewer than that contended for by the appellees.
The plain meaning of the words used, was,
that which we at first gave to them: obliged to
abandon our first impressions, in order to make
the law consistent throughout, we can only
take that which presents the least difficulty,
for it is impossible to come to clear conclusions on such obscure legislation.

We have conducted the inquiry so far in
relation to the rights of the father of the
grand children. If he were presenting himself with his brothers and sisters, it is the opinion of the court that he would be obliged to
collate the debt, which the note produced in
evidence, shows to have been due by him.

This opinion brings us to the second, and
equally important question in the cause; that
is, whether the grand children are obliged to
collate the debt due by their father, whose
succession they have accepted with the benefit of an inventory.

The affirmative of this position has been
supported; on the general principle that the
*representative* never can have more or greater
rights than the *represented*; that positive texts

East'n. District,
June, 1826.

DESTREHAN
vs.
DESTREHAN'S
EXECUTORS.

of our law have established this doctrine in regard to grand children; and that if the law were even doubtful, the court should prefer the interpretation, which, by establishing equality between the heirs, would do justice.

The proposition, that the representative never can have more rights than the represented, struck us, on the argument, as entitled to great weight, and as almost conclusive on the case; further reflection, however, has convinced us that it must be admitted with many modifications: taken *abstractedly* it cannot be controverted; for, independent of positive legislation, a man cannot give to another, rights which he does not possess. But where the representation is created by positive authority, it is subject to all the modifications which the creator may choose to attach to it: thus, in relation to our political representatives, it is well known they have rights conferred on them which their constituents do not possess either individually or collectively: the right not to be questioned for any speech, or debate; the privilege from arrest, &c. So in respect to the representation which is created by law, for dividing estates among individuals; if it should be found, on further examination, that

it has been established with limitations to the general principle, we are satisfied that the general principle, cannot prevent these limitations from having effect.

East'n. District.
*June*, 1826.
DESTREHAN
*vs.*
DESTREHAN'S
EXECUTORS.

But it is said the positive provisions of our law on the subject, now under consideration, support the general principle relied on. The first article quoted, is that in relation to the manner in which children are called to the succession of their grandfather, where their uncles and aunts are alive; and it states, that the grand children coming in *by way of representation*, whatever may be the number, shall not receive among them all, any thing more, than the share, or shares, which would have belonged to their fathers and mothers. This law follows that which declares, that where all the sons and daughters are dead, the children shall take by heads; and is providing for the number of shares into which the estate shall be divided, in case some of the former are alive. It is of importance then, in the present inquiry, only as establishing that children coming to the partition of a succession under the circumstances which this case presents, *come in by representation. Civil Code*, 150, *art.* 29.

" Representation is a fiction of the law,

the effect of which is to put the representative in the place, degree, and rights of the represented." *Civil Code*, 148, *art.* 18.

This provision, if taken alone, certainly goes the whole length for which the appellees contended. Before noticing, however, the important limitation which the legislator has thought proper to affix to it, in relation to the subject under consideration; it is necessary to a true construction of the article in which that limitation is found, to bring into view some of the other provisions of the code, on the same matter.

" One can represent a person, to the succession of whom he has renounced. Thus it is not necessary that the children who succeed by representation should be heirs of their father and mother. Although they should have renounced their succession, they are nevertheless fit to represent them in the succession of their grandfather, or other ascendants." *Civil Code*, 148, *art.* 25.

Now, here is a provision which cannot be reconciled with the effect, which it is contended should be given to the general rule already cited. According to that rule, the representative shall have *the same rights* as the

East'n. District.
*June, 1826.*

DESTREHAN
*vs.*
DESTREHAN'S
EXECUTORS.

represented. This provides, that the child who has renounced his father's succession may still represent him in that of the grandfather. It is a formal provision of our law, that children who have renounced, or accepted, with the benefit of an inventory, are not responsible for the debts of their ancestor; then if they can represent their father, although they have renounced his estate, they stand in a different situation from him; for he would have to pay any debt he might owe to his father, or others.

The next succeeding article to that just quoted, shows still more clearly, what is meant by representation, and with what limitation it must be understood. " When a person has been disinherited by his father or mother, or excluded by cause of unworthiness, his children cannot represent him, in the succession of their grandfather or other ascendants, if he is alive at the time of opening the succession; but they can represent him, if deceased before. *Civil Code,* 148, *art.* 26.

From this provision it follows, that the representative may have more rights than the represented. The child, if alive could take

East'n. District.
June, 1826.

DESTREHAN
vs.
DESTREHAN'S
EXECUTORS.

nothing: the child represents him, and yet takes the share in the grandfather's estate, which the father could not have taken.

Acting on the same principle, that the representation of the father is a mere fiction of the law, the legislator has affixed a most important limit to it, in relation to the obligation of the grand children to collate. The provision in our code is in these words: " In like manner the grand child, when inheriting in his own name from the grandfather or grandmother, is not obliged to refund the *gifts* made to his father, even though he should have accepted his succession; but if the grand child comes in only by right of representation, he must collate what has *been given* to his father, even though he should have renounced his succession. *Civil Code*, 194, *art.* 203.

The difference of the obligation between the father and his son, in regard to the collation in the grandfather's estate, cannot be more strikingly shown than by quoting again from the code the provision in respect to the father, and placing it in opposition to that, which imposes this burthen on the grand child. When the former partakes, " the mass

East'n. District.
*June*, 1826.

DESTREHAN
*vs.*
DESTREHAN'S
EXECUTORS.

must include the collations which each co-parcener may have to collate, conformable to the rules hereafter prescribed, for gifts so made to him, *or debts* by him due." But the latter are only obliged to bring in *what has been given* to their ancestor. Now if *gifts* included *debts*, why the use of the latter word in speaking of the obligations of the father? If it did not, why confine the obligation of the grand children to what had been *given?* The only answer we can conceive to this inquiry is, that the legislature intended to make a difference. That they have done so, no one who compares the phraseology of the two provisions, can for one moment hesitate to admit.

These positive provisions of our law, and the reasoning just used on them, furnish, we believe, a complete answer to the maxim so much pressed on us in the argument, *qui jure alterius utitur, eodem jure uti debet.* To this rule, to which it was said there was no exception, we have seen there are many. The error of giving it so much importance, proceeds, from confounding *representation*, with *transmission.* The latter arises from a right vested in one person being transferred to another. In such case, he who receives it can have no other, or

East'n. District.
*June*, 1826.

DESTREHAN
*vs.*
DESTREHAN'S
EXECUTORS.

greater rights, than the person from whom it has passed. As, if the father should die after the succession was opened, and his children came forward to represent him in the partition of their grandfather's estate; in such case they could take neither more, nor less, than he did. But when the father dies before the grandfather, the grand children do not take their right from their father; they receive it from the law, independant of his acts or his will; and even when he should have manifested a contrary intention. This distinction, which is obvious enough, does not originate with this court; it is taken from the jurists and tribunals of France, who have commented on those articles of the Napoleon Code, from which ours are copies: and they deduce from it the necessary consequence, *that the grand child, when he comes in by representation, is not obliged to pay the debts of his father.* *Manuel de Droit Français, art.* 744, in note; *Journal des Audiences,* 177 ; *Toullier Droit Civil Français, vol.* 4, *lib.* 3, *tit.* 1, *cap.* 3, *nos.* 186, 187 ; *Delvincourt, Cours de Code Civil, Notes et Explications,* 28; *Paillet, Legislation et Jurisprudence des Successions, vol.* 2, 600.

The author last cited, in laying down the

principle, that the grandchild, when he takes by representation, is not responsible for the debts due by the father, suggests a doubt whether the rule applies to those due by the latter to the grandfather, and refers to the observations of *Merlin* on that point. We have followed the reference, and perused it with attention; as we have also a work not cited in argument, *Chabot on Successions*, in which the same doctrine is found. Both these writers state, that the grandchild is obliged to collate, the gifts made to the father, and the money lent to him. *Répertoire de Jurisprudence, vol.* 10, *p.* 686; *Chabot sur la loi des Successions,* (ed. 1818) *vol.* 3, *p.* 366.

We are unable to see on what grounds this doctrine rests, or how a law which says, that the grandchild shall collate *gifts* made to the father, can be extended to *debts* due by him for the loan of money on interest; or any other onerous contract in which the pecuniary interests of the grandfather formed the leading motive of the contract, instead of the advancement of his child; or why the children of the grandfather should be preferred in virtue of such obligations, to any other creditor. If by the expressions used by Merlin, *un simple*

East'n. District.
*June,* 1826.

DESTREHAN
*vs.*
DESTREHAN'S
EXECUTORS.

*prêt d'argent,* be meant, a loan of money without interest, the doctrine is intelligible enough; for, the advancement of the father must be presumed the ruling motive. Other writers confine the obligation of the grandchildren *to what has been given. Toullier, Droit Civil Français, vol. 4, liv. 3, tit. 1, cap. 6, no. 459 ; Delvincourt, Cours de Code Civ. vol. 3, note to p. 38.*

The reasons adduced for establishing this doctrine is, that the representative cannot have more rights than the represented. We have already expressed ourselves fully on this point; but, if this be the ground on which the obligation of the grandchild to collate money lent his father on interest be placed, then we are unable to perceive why the obligation should stop there, or on what solid grounds, debts due for property sold to the father, or on any other onerous contract, should be excluded : yet, not a writer whom we have been able to consult, carries the obligation thus far. To this doctrine, therefore, we cannot assent, opposed as it is, to what we believe the language and the spirit of the law, and to show more clearly the soundness of the construction we have adopted, and place the whole merits of this part of the sub-

ject at once before the minds of others. We shall bring together the several enactments, and close our observations on their legal construction, by reference to a general principle, the truth of which we have never heard contested.

East'n. District.
*June*, 1826.

DESTREHAN
*vs.*
DESTREHAN'S
EXECUTORS.

The *first* provision in the code which furnishes the general principle, declares, that the representative shall have *the same rights* as the represented.

The *second* provides, in relation to this particular subject, that *the represented* (the father) shall collate the *debts* due by him.

The *third* declares, that the *representative* (the grandchild) shall collate the *gifts* made (to the father) *the represented.*

The question then is, whether the limitation here affixed to the general principle, is to control it. Now, there is no rule better known, and we may add, more frequently acted on in the interpretation of statutes, than this : that general provisions are controled, by special enactments which follow them. They are always understood to be exceptions, which the law maker establishes to the general principle.

And why should this exception not be

East'n. District.
June, 1826.

DESTREHAN
vs.
DESTREHAN'S
EXECUTORS.

made? and is not the limitation which the legislature has thought proper to affix to the rule, wise, just and politic, are questions which this court has frequently asked itself in the examination of this subject. The object of the law is, to prevent one child from profiting by parental affection, at the expense of the other. But when the object of the contract has not been the gratification of this ill regulated feeling on the part of the parent, but to benefit himself, and promote his pecuniary interests; whether that object be ascertained from selling to the child property at a high price, or lending him money at the heaviest rate of interest which the law will allow; he ought not, nor his heirs ought not, to stand in a better situation than other creditors. *Where gain is the motive, the risk of loss should be the consequence.* Nor can it be excluded from the consideration of this part of the subject, that the influence of parental authority, and the confidence which flows from filial affection, may induce the child to enter into contracts with the father, which would not be made with other persons, and that the law is both benevolent and wise, in refusing to such agreements any preference over others.

East'n. District.
*June*, 1826.

DESTREHAN
*vs.*
DESTREHAN'S
EXECUTORS.

But it is said this construction violates every principle of equity. If by equity be meant giving to each child, and the representatives of each child, exactly the same sum out of the grandfather's estate, then this opinion does violate that equity. But abstractedly considered, we apprehend there are few who will admit this proposition: this court cannot. The equity, independent of positive regulation, we should rather think depends on the particular circumstances of each case. If the grand children, to the claims of orphanship and infancy, add those of poverty; and are opposed to wealth, and age, the equity would be the other way. But those matters depend entirely on positive law, and the opinion we have enounced, *can only be inequitable in as much as it is contrary to law.* When all the parents are dead, the grand children, by a positive provision of our code, take alike, no matter what sum their fathers or mothers may have received. By the former jurisprudence of this country, grand children were not obliged to collate even the gifts made to their parent, unless the object given, descended to them and they profited by it. The equity therefore relied on, receives as little sanction from our

ancient and present legislation, as it does from the common feelings of mankind. *Civil Code,* 194, *art.* 203 ; *Febrero, p.* 1, *cap.* 1, §7, *no.* 117.

The real question in the cause is, was the money given in advancement of the son's claims in the succession of the grandfather If it was, then the grand child should collate it. If on the contrary, it was a contract by which the parties became creditor and debtor in the common acceptation of the terms, then it must stand on the same footing as ordinary claims arising out of agreements entered into with strangers. The appellees, aware of this, produced parol evidence in the court of the first instance, to take the transaction out of the ordinary course of business, as evidenced by the obligation. Before, however, noticing that evidence, it is proper to set out the note itself. The following is a translation of it :

$58,564.            NEW-ORLEANS, 30 April, 1822.

On the first day of April, 1826, I promise to pay to the order of Mr. Jean Noel Destrehan, at the domicil of Mr. David Oliver, the sum of fifty-eight thousand five hundred and sixty-four dollars, value received.

Signed            G. N. DESTREHAN.

Of this sum, according to the grand chil-
dren, $21,000 was composed of interest, but
the appellees insist that only $18,564 of the
whole amount was formed in this way. It is
immaterial which we adopt, in seeking for the
character of the transaction.

Scarcely any agreement which could be pro-
duced in a court of justice, would less evi-
dence an intention of a father bestowing a
benefit, or conferring an advantage on his
child. The note is made negotiable, *and a
domicil different from that of the drawer, given to
facilitate this object.* The heaviest rate of in-
terest which the law will permit is charged;
and a certain day fixed for the payment, at
the expiration of which it could be enforced.
We are at loss to imagine what other features
could have belonged to the contract, if the son
had borrowed from a total stranger. The
term of credit given, shows almost conclu-
sively, that the son was not to pay out of his
claims on the father's estate. The heavy rate
of interest repels the idea, that any advantage
was to be conferred.

Nothing in the parol evidence destroys the
strong conviction produced by these facts.

The first witness says, he understood from

DESTREHAN
*vs.*
DESTREHAN'S
EXECUTORS.

the son that the note was given for different advances which the father had made to him, and that the son in speaking of them, spoke of them as sums which he would never be called on to repay, and stated that it appeared to be his father's attention to make the advances part of the share which might be coming to him out of his father's estate.

That such was the son's hope we believe; but the contract shows that it depended entirely on the father's pleasure, whether that hope should be realised or not. The witness does not state the money was lent on these terms. The note contradicts any such idea. The son did not say the father had given him the money in advance of what he might expect as heir. He only stated that it *appeared* to be his *intention* to consider it such.

This evidence does not take the case out of an ordinary loan of interest.

That in relation to the expressions used by the father, is still weaker. There is no acknowledgement by him, that the money was given to his son, nor any thing like it, unless one should consider such the statement, of the witness, that Mr. Destrehan the father, manifested some reluctance in making the

advance of $40,000 to his son G. N. Destre-
han, and observed " that he did so on account
of the plantation then purchased by his son."
But these expressions are too equivocal, to
destroy the plain import of the instrument.
An engagement, to pay at a certain time with
interest, is better evidence of what the parties
meant, than that furnished by conversations of
this kind.

The strongest argument, in favor of the
father's intention to consider this as money
given to the heir, is the entrusting him so large
a sum of money without security. And we
do believe that it may have entered into the
consideration of the former, that if the money
was not repaid the son would be obliged to
collate it out of his claims on the succession.
But it is clear that he did not look to that
alone, that he reserved to himself the right of
enforcing his demand, whenever the credit
which he gave should expire.

We therefore conclude that the money,
which formed the consideration of this note,
was not a *gift* from the father to the son;
and that, as the law confines the obligation of
the grand children, to bring into collation
that which was *given* to their father the court

East'n District.
June, 1826.

DESTREHAN
vs.
DESTREHAN'S
EXECUTORS.

below erred in compelling the appellants to deduct it out of their share in J. N. Destrehan's estate.

In the examination of this case a difficulty occurred to us, in relation to the manner in which the minor heirs have entered into the succession of their father. We have doubted whether an absolute renunciation was not necessary, instead of an acceptance with the benefit of an inventory. It is stated affirmatively by several of the writers, that grand children taking the property in the grandfather's estate, are not responsible for the debts of the father, when they renounce the succession of the latter. Their rights, when they accept with the benefit of an inventory, do not seem to have been noticed. After much reflection we are unable to distinguish the one case from the other. The beneficiary heir is regarded merely as the administrator of the estate. And he is responsible no further than for the amount of the property belonging to the father, which comes into his hands. Now that which the grand child takes in the grandfather's estate is not the property of the father, for the latter died before the succession was opened, consequently nothing

was vested in him, which he could transmit to the son.

East'n. District.
*June*, 1826.

DESTREHAN
*vs.*
DESTREHAN'S
EXECUTORS.

This case, as it will be seen, is one in which there is much difficulty, and we have felt considerable doubts in regard to the true construction of the articles in our code on which this contest has arisen. That which we have given, we believe to be freer from objections, than any other which can be adopted, and on the whole we do not think that the former judgment of the court requires any alteration.